IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT SHUFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:10cv203-WHA-WC |
| | ) | (WO) |
| CITY OF MONTGOMERY, | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. #17) filed by Defendant City of Montgomery, Alabama (the "City").  The Plaintiff, Robert Shuford ("Shuford"), filed an Amended Complaint in this case, alleging sex discrimination (Count One), race discrimination (Count Two), and retaliation (Count Three), all in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*  For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

### II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes

demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party

has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a

genuine issue for trial.  *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is

genuinely disputed, must support their assertions by "citing to particular parts of materials in the

record," or by "showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  Acceptable materials under Rule 56(c)(1)(A) include

"depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the non-movant must be

believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty

Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).[1]

---

[1]In his briefs, Shuford cites to cases from Alabama state court to describe the standard for
summary judgment.  This is erroneous, as a motion for summary judgment filed in federal court
is governed by federal summary judgment standards.  *See, e.g.*, *Tidd v. Walmart Stores, Inc.*, 757
F. Supp. 1322, 1324 (N.D. Ala. 1991) ("The standards for deciding a motion for summary
judgment are set for this court by the Federal Rules of Procedure, the Federal Rules of Evidence,

## III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to Shuford, the non-movant:

### A.      The City's Hiring Process

The City hires employees through a multi-step process that involves the Montgomery City-County Personnel Board (the "Personnel Board").  The Personnel Board is a separate entity from the City, and serves the City as well as Montgomery County, the Montgomery Airport Authority, and the Montgomery Housing Authority.  *See* Montgomery, Ala. Code, app. A, ch. 4, § 6; Ex. A to Def.'s Br. in Supp. of Summ. J. at 1.[2]  The Personnel Board helps to recruit and qualify applicants for employment with the City.  *See* Ex. A to Def.'s Br. in Supp. of Summ. J. at 1-2.  Specifically, when the City is determining whom to hire for a particular position, it chooses from a register of qualified applicants.  *See, e.g.*, Montgomery, Ala. Code, app. A, ch. 4, § 6. This register is created by the Personnel Board.  *Id.*

The Personnel Board must follow certain requirements when creating the register. Specifically:

> If appointment is to be made from employment or promotional lists, the names of persons willing to accept appointment shall be certified by the Personnel Director in the order in which they appear on the lists.  The number of names certified shall exceed by four the number of vacancies to be filled.

_____

and the evidentiary standards developed thereunder, not by decisions of the state courts.").

[2]Exhibit A to Defendant's Brief in Support of Motion for Summary Judgment is an Affidavit of Barbara M. Montoya, the Director of the Personnel Board.

*Id.* § 6(b).  Therefore, generally, if one vacancy exists, the Personnel Board will deliver a register of five applicants to the City from which the City selects one to fill the vacancy.

Sometimes, however, the register contains more than five applicants for one vacancy. This is because Rule VIII(a)(1) of the Personnel Board Rules and Regulations states that "[w]here more than one person is eligible in the last ranked position . . . all applicants tied at that score shall be certified."  Montgomery, Ala. Personnel Bd. Rules & Regs. r. VII, § 8(a)(1), *available at* http://www.montgomeryal.gov/Modules/ShowDocument.aspx?documentid=220. Therefore, if there are two applicants tied at fifth who are applying for a single vacancy, the Personnel Board will certify a register of six applicants instead of five.

### B.      Shuford's Employment History

Shuford is an African-American male who, during all relevant times of this case, worked as a mechanic and supervisor in the City's fleet management department.  He has worked for the City for over 15 years.  Shuford also has over 40 years of experience working in the field of fleet management, as well as a degree in fleet management.

Shuford has been involved in previous employment disputes with the City.  He was once a witness in a suit by an ex-employee against the City's fleet management department. Additionally, prior to the events of this case, Shuford filed three EEOC charges and a federal lawsuit against the City.

### C.      Shuford is not Selected for the May 9 Position

4

On May 9, 2008, the Personnel Board posted a job opening for the position of Garage Superintendent (the "May 9 Position").  Shuford applied for this position.

Subsequently, the Personnel Board certified Shuford as number one on the register.[3] Because there was a tie among applicants ranked at the fifth place on the register, the register contained more than five applicants.

During the interview process, the City determined that Shuford's application contained "false information and misrepresentations."  Ex. H to Def.'s Reply Br. at 1.  Specifically, after learning of the problems with Shuford's application, Terry Gaddis ("Gaddis"), the Director of Fleet Management for the City, filed a "Form 13" with the Personnel Board listing five problems with Shuford's candidacy:

> First, Mr. Shuford indicated on the job application . . . he had experience in purchasing vehicle/equipment parts and materials . . . . when questioned on explaining his experience . . . he stated that he had no actual experience within the past five (5) years and was unable to answer basic questions related to this subject.

> Second . . . . [Shuford's] experience in preparing and monitoring a budget is very limited during the past five (5) years.

> Third, [Shuford stated in his application that he] "developed PM plans with the Integrated 400 computerized Vehicle Maintenance Scheduling" when in fact during the interview, he stated he only ensured PM's were accomplished on City vehicles/equipment by his mechanics, but never actually developed, prepared and executed a preventative maintenance program for the City's vehicle/equipment fleet.  He also had problems answering basic questions in this area that he would have known if he had developed, prepared and executed a PM program.

> [Fourth, Shuford's answers in response to questions on an engine oil analysis issue were unimpressive, and] . . . . Shuford stated that he had no actual experience dealing the with [sic] engine oil analysis program during the past five (5) years.

---

[3]Neither party explains how the Personnel Board scores or ranks applicants.

[Fifth,] . . . Shuford demonstrated he could not follow simple written instructions on completing a requisition exercise during the interview.

Ex. S to Def.'s Br. in Supp. of Summ. J. at 2.

Because of these problems, Shuford was removed from the register and was not considered for the May 9 Position. Ex. L to Def.'s Br. in Supp. of Summ. J. ¶ 2. Instead, the City hired Rovanda Schritter, a white female.

**D.      Shuford is not Selected for the January 22 Position**

On January 22, 2009, another Garage Superintendent Position (the "January 22 Position") opened, and on or about this date, the City hired a white male. However, the City did not engage in its usual hiring practices, and never posted or made an announcement to notify applicants of this opening.

**E.      Shuford is not Selected for the Service Center Manager Position**

On March 12, 2009, the Personnel Board posted a job opening for the position of Service Center Manager (the "Service Center Manager Position"). Shuford applied for this position.

On April 7, 2009, the Personnel Board certified a register of ten candidates to the City, because six applicants were tied for fifth place. Ex. A to Def.'s Br. in Supp. of Summ. J. at 3; Ex. G to Def.'s Reply Br. Shuford was tied for first place on the register. Ex. G to Def.'s Reply Br. For a reason unexplained by the parties, only nine candidates were interviewed for the position.

The City convened a panel of three individuals to interview the candidates. The panel members were (1) Mr. Eugene Knox ("Knox"), the Deputy Director of fleet management, a

6

black male; (2) Ms. Diane Burke ("Burke"), the Deputy Director of the Sanitation Department, a black female; and (3) Mr. Royce Albright ("Albright"), the Assistant Director for Administration of fleet management, a white male.

Shuford performed poorly at his interview. Burke stated, in an affidavit, that Shuford "did not have the experience and knowledge which his application seemed to reflect that he had." Ex. O to Def.'s Br. in Supp. of Summ. J. ¶ 3. For example, Shuford wrote on his application that he had "coordinated the timing of service requests, especially large or time intensive projects, in order to ensure a balanced workload and to determine the projected completion times for repairs/maintenance." Ex. J to Def.'s Br. in Supp. of Summ. J. at 4. However, when asked to "[d]escribe a work priority system you have used and explain some 'exceptions' you had to make while using the system," Shuford's response to the interviewers indicated that he did not have a thorough understanding of the current priority system used by the City's fleet management department. *See* Ex. O to Def.'s Br. in Supp. of Summ. J. ¶ 3. Shuford had worked for the City's fleet management department for a long time, and, according to Burke, should have had a thorough knowledge of the priority system. *Id.* Additionally, Burke stated that Shuford "had a hard time articulating his responses and did not present well in the interview." *Id.* After the interview, the three interviewers scored each applicant's answers to the interview questions, and combined each interviewer's score to get a total score for each applicant. *Id.* ¶ 4; *see also* Ex. Q to Def.'s Br. in Supp. of Summ. J. (score sheets of each applicant filled out by each interviewer). Shuford's total score was the second-worst out of nine candidates. Ex. O to Def.'s Br. in Supp. of Summ. J. ¶ 4.

The interviewers then discussed which applicant they preferred to hire.  Knox expressed support for one candidate (not Shuford), and when the others disagreed, Knox refused to participate in the remainder of the selection process.  Burke and Albright then independently prepared a list of their three favorite candidates, based on each candidate's (1) score; (2) experience; and (3) presentation in the interview.  While Burke and Albright did not agree on the order of the top three candidates, each had selected the same top three, and agreed to submit this list to Gaddis, the Fleet Management Director, without ranking them, so Gaddis could choose whom to hire.  Shuford was not in the top three.  Ultimately, Gaddis interviewed all three candidates, and hired Steve Lammon ("Lammon"), a white male.  Gaddis stated that Lammon was a good candidate because of his (1) previous experience running an automotive service center; (2) technical knowledge; (3) experience supervising employees; and (4) interpersonal skills.

## IV. <u>DISCUSSION</u>

Shuford's claims are based on the City's failure to promote him to three separate jobs: (1) the May 9 Position; (2) the Service Center Manager Position; and (3) the January 22 Position. Shuford argues that the City's failure to promote him to each of these jobs was the result of retaliation (Count Three), that the City's failures to promote him to the January 22, 2009 Garage Superintendent position and the March 12, 2009, Service Center Manager position were the result of race discrimination (Count Two), and that the City's failure to promote him to the May 9, 2008 Garage Superintendent position was the result of sex discrimination (Count One).

8

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII further prohibits an employer from discriminating "against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The critical element in establishing wrongful discrimination or retaliation in violation of Title VII is discriminatory or retaliatory intent.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  Such intent can be established through (1) statistical proof of a pattern of discrimination or retaliation; (2) direct evidence of discrimination or retaliation, which consists of evidence that, if believed, would prove the existence of discrimination or retaliation without inference or presumption; or (3) circumstantial evidence of discriminatory or retaliatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

Where, as here, Shuford seeks to prove retaliation as well as intentional discrimination on the basis of race and gender by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas*.  Under this framework, the plaintiff must establish a prima facie case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802.  After the plaintiff has established a prima facie case, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254

(1981).  The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated or retaliated.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

### A.       Count Three - Retaliation Claims

Shuford has brought retaliation claims with respect to all three of the promotions that he was denied in this case.  To state a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).  Because, as discussed below, Shuford loses on all three failure to promote claims for reasons other than failing to meet his prima facie case with respect to retaliation, the court assumes without deciding that Shuford has met his prima facie case with respect to retaliation.[4]

### B.       The May 9, 2008 Garage Superintendent Position - Sex Discrimination and Retaliation

---

[4]Shuford asserted that he served as a witness for an ex-employee, and filed EEOC complaints and a federal lawsuit against the City, and that the City was aware of this activity.

Shuford argues that the City's failure to promote him to the May 9 Position was the result of sex discrimination and retaliation.[5]  The City responds that there are legitimate, nondiscriminatory reasons why Shuford was not promoted.[6]  The City does not argue that Shuford failed to meet his prima facie case with respect to sex discrimination, and, as previously discussed, the court will assume that Shuford met his prima facie case with respect to retaliation.

Because Shuford has satisfied his prima facie case, the burden shifts to the City to articulate a legitimate nondiscriminatory reason for choosing not to promote Shuford.  This burden is "exceedingly light" and the employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (internal quotation marks omitted).

In this case, the City met its burden by stating that Shuford did not receive the May 9 Position because he included false information and misrepresentations on his application.[7]  *See* Ex. L to Def.'s Br. in Supp. of Summ. J. ¶ 2; Ex. S to Def.'s Br. in Supp. of Summ. J. at 2.  After the City interviewed Shuford, Gaddis filed a Form 13 that described these misrepresentations, as

---

[5]Shuford mentions race on occasion in his argument regarding the May 9 Position, but his Amended Complaint alleges only sex discrimination in his claim regarding that position (Count One).

[6]The City also contends that Shuford failed to exhaust his administrative remedies as to this claim, because the EEOC charge did not specify a sex discrimination claim.  However, because the court concludes that there were legitimate, nondiscriminatory reasons why Shuford was not promoted, the court need not address the exhaustion issue.

[7]The City makes its merits arguments regarding the May 9 Position under only the heading of "Count III - Retaliation," and not under a "Sex Discrimination" heading.  *See* Def.'s Br. in Supp. of Summ. J. at 14.  However, the City's arguments include a discussion of "Legitimate reasons Plaintiff did not receive the job openings," that apply equally to both discrimination and retaliation.

11

well as how Shuford did a poor job responding to a question about the City's engine oil analysis program, and how Shuford failed to follow written instructions in a requisition exercise during the interview.  Ex. S to Def.'s Reply Br. at 2.  This form establishes that the City could have reasonably believed that Shuford made misrepresentations on his employment application.  *See, e.g.*, *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (stating that the inquiry behind disparate treatment claims is whether the employer *believed* that the employee committed misconduct, and whether that belief led to adverse employment action against the employee; "[t]hat the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong"); *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *Chapman v. AI Transp.*, 229 F.3d 1012, 1036 (11th Cir. 2000) (en banc) (holding that it is a legitimate, nondiscriminatory reason not to hire a candidate who has a poor interview as subjectively determined by the candidate's interviewers); *Masso v. Miami-Dade Cnty.*, 247 F. App'x 190, 191-92 (11th Cir. 2007) (finding an employer's reasonable belief that an employee falsified her employment application to be a legitimate, nondiscriminatory reason for adverse employment action).

Because the City has articulated a legitimate nondiscriminatory reason for its decision not to promote Shuford, the burden shifts to Shuford to show that this reason was a pretext for discrimination or retaliation.

To demonstrate pretext, a plaintiff must show that the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory [or

retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (citing *Burdine*, 450 U.S. at 256) (quotation marks omitted). Furthermore, the plaintiff must "produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman*, 229 F.3d at 1037.

Shuford responds by stating: "[i]n its affidavit, the Defendant asserts that it disqualified the Plaintiff based on misrepresentation, but fails to set forth specifically, what the Plaintiff misrepresented." Pl.'s Resp. in Opp. to Summ. J. at 10. However, the Form 13 itself, cited by the City, indicates that the City believed Shuford committed at least two misrepresentations in his job application by misstating his job experience with respect to (1) "purchasing vehicle/equipment parts and materials;" and (2) developing "PM plans" with the 400 system. Ex. S. to Def.'s Reply Br. at 2.

Shuford responds to this fact by stating that he was actually very familiar with the 400 system, and that the interviewers were wrong to believe otherwise. Shuford points to an affidavit of Dallas Venable ("Venable"), who stated that (1) Venable is experienced in working with the 400 system; (2) he is personally acquainted with Shuford; and (3) Shuford "totally understands and has the ability to work [the 400] system." Pl.'s Ex. D at 2-4. However, as previously stated, what matters in a Title VII case is not whether Shuford actually was familiar with the 400 system, but rather, whether the City reasonably believed that Shuford was unfamiliar. In any event, even if the court were to conclude that Venable's assertion proved that the City's interviewers did not really believe that Shuford was unfamiliar with the 400 system,

this argument only responds to one of the misrepresentations the City states existed on Shuford's application.

Because Shuford has failed to rebut the City's legitimate, nondiscriminatory reasons, summary judgment is due to be granted on Shuford's sex discrimination claim and, for the same reason, on his retaliation claim with respect to the May 9 Position.

**C.      The March 12, 2009 Service Center Manager Position - Race Discrimination and Retaliation**

Shuford argues that the City's failure to promote him to the Service Center Manager Position was the result of race discrimination and retaliation.  The City argues that (1) Shuford fails to meet his prima facie case for race discrimination; and (2) in any event, the City had legitimate reasons for choosing a different candidate for the Service Center Manager Position.

1.      *Prima Facie Case*

The City argues that Shuford fails to meet his prima facie case with respect to race discrimination because he has failed to show that "he was treated disparately from a similarly-situated employee outside of his protected class."  Def.'s Br. in Supp. of Summ. J. at 8.  The court rejects this argument.  To establish a prima facie case for failure to promote, an employee must show that (1) he belongs to a protected class; (2) he was qualified for a job for which his employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the employer continued to seek applicants or filled the position with a person outside of the plaintiff's protected class.  *See Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998); *Williams v. Ala. Indus. Dev. Training*, 146 F. Supp. 2d 1214, 1219 (M.D. Ala. 2001).  In this

14

case, (1) Shuford was in a protected class, black; (2) Shuford was qualified for the position, or at least, the City does not contest his qualifications with respect to the prima facie case; (3) Shuford was not hired; and (4) the City hired a white male, Lammon, for the position.  Therefore, Shuford satisfies his prima facie case.

        2.      *Legitimate, Nondiscriminatory Reasons*

Because Shuford has satisfied his prima facie case, under *McDonnell Douglas*, the burden shifts to the City to articulate a legitimate nondiscriminatory reason for choosing not to promote Shuford.  The City argues that it did not promote Shuford because it determined that he was not the best candidate for the position.

First, the City notes that Shuford performed poorly during his interview with Knox, Albright, and Burke.  In fact, according to the interview point totals created by Knox, Albright, and Burke, Shuford performed the second-worst out of nine candidates in the interview.  Second, the City notes that Lammon, the candidate ultimately selected, had (1) previous experience running an automotive service center in the private sector; (2) technical knowledge; (3) experience supervising employees; and (4) interpersonal skills.  These reasons are sufficient to meet the City's burden of proffering a legitimate, nondiscriminatory reason for choosing not to promote Shuford.  *See Thomas v. Troy City Bd. of Educ.*, 302 F. Supp. 2d 1303, 1307-08 (M.D. Ala. 2004) (Thompson, J.) (concluding that an employer's determination that a plaintiff is less qualified than another candidate for a position is a legitimate, nondiscriminatory reason).

        3.      *Pretext*

Because the City has articulated a legitimate, nondiscriminatory reason for its decision not to promote Shuford, the burden shifts to Shuford to show that this reason was a pretext for discrimination.

Shuford presents several arguments for why he believes that the City's proffered reasons are pretext. First, Shuford claims that the interview scoring system was subjective, and therefore, the City was simply manipulating its scoring system to select whom it wanted for the job. The City does not dispute that its interview scoring system was subjective, nor need it do so. An employer can rely on subjective criteria in selecting applicants, and these criteria can constitute legitimate, nondiscriminatory reasons for choosing not to hire a particular applicant. *Chapman*, 229 F.3d at 1033 ("A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas / Burdine* analysis. Indeed, subjective evaluations of a job candidate are often critical to the decisionmaking process[.]").

Second, Shuford claims that the panel made up of Burke, Knox, and Albright was created simply to make it seem like the panel was controlled by black individuals. Specifically, Burke and Knox are both black, and Shuford claims that Burke was placed in "control" of the panel, even though anything Albright wanted was done. Shuford also claims that Burke "has very little knowledge of what Fleet Management is all about." The court rejects this argument, because not only does it fail to rebut the City's proffered nondiscriminatory reasons, but Shuford presents no evidence in support of it.

Third, Shuford claims that the City improperly certified ten applicants rather than five for the Service Center Manager Position. Shuford points to the City's hiring policy, which states that the Personnel Board will certify the top five applicants for a particular position. Shuford

16

claims that Lammon, who ultimately received the position, was only interviewed because the City interviewed more than five applicants.

The City states, and Shuford acknowledges, that if there is a tie for applicants at the fifth certified position, then all of the applicants tied for fifth will be certified and the certification list may exceed five applicants. The City states that there was a tie of six individuals for the fifth slot, and therefore, ten applicants were certified to be interviewed. In support, the City submitted the register listing all of the certified applicants, including the six tied at fifth place, as well as the affidavit of Montoya stating that there was a six-way tie. Ex. E to Def.'s Br. in Supp. of Summ. J. at 3; Ex. G to Def.'s Br. in Supp. of Summ. J. at 1. Shuford attacks this argument for two reasons. First, Shuford claims that the argument is unbelievable. This claim is insufficient to survive summary judgment, as it is a bald claim with no supporting evidence. Second, Shuford states that Venable, who received a ranking of fifth, was not notified that he was tied with another applicant for fifth, and therefore, there must not have been any ties for fifth.[8] Shuford asserts that the City has a policy of notifying applicants when they are tied on a certification list. However, the only supporting evidence Shuford presents is one instance where the City notified an applicant he was tied on a certification list. Pl.'s Ex. G at 2. Moreover, Montoya, the director of the Personnel Board, stated in an affidavit that, for a short period of time, the Personnel Board used to notify applicants if there was a tie, but it no longer does so, nor was there ever a formal policy that required the Personnel Board to do so. Ex. E to Def.'s Reply Br. at 3. The court finds, based on Montoya's affidavit and the weak evidence presented

---

[8]Shuford presents no evidence of whether the other individuals tied for fifth were notified of a tie.

by Shuford, that there is no issue of fact that the City had a policy of notifying applicants that they were tied for a position on the certification list.  Nor does Shuford create an issue of fact that the City did not actually have a six-way tie for fifth place on the register.

Fourth, Shuford claims that the certification list presented by the City was fabricated.  It is a very serious assertion to claim that a party is lying and presenting fabricated evidence to the court.  Despite that serious allegation of wrongdoing, Shuford fails to present any evidence in support of his claim that the list is fabricated.  Due to the lack of any supporting evidence, the court rejects Shuford's allegation, and cautions against making such unsupported charges in the future.

Fifth, Shuford criticizes Lammon's experience and qualifications and claims that he is more qualified than Lammon.  Shuford characterizes as "humorous" the fact that Lammon previously worked as a car salesman, and critiques the fact that Lammon "merely attended" training courses during his career.  Shuford asserts that he has a degree in fleet management, 40 years of experience working in the industry, and more experience working for the City than Lammon.  Shuford also criticizes the City's reliance on the fact that Lammon appeared to be a "team player."

The Eleventh Circuit has stated that where a claim of discrimination is based on relative qualifications, the "plaintiff must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'"

*Cooper*, 390 F.3d at 732.  Shuford has not proven such a wide disparity in qualifications.[9]

Instead, Shuford's arguments boil down to Shuford's opinion that he was a better candidate than

Lammon.  However, an employee may not "substitute his business judgment for that of the

employer."  *Chapman*, 229 F.3d at 1030; *see also Ash v. Tyson Foods*, 190 Fed. App'x 924, 927

(11th Cir. 2006) (noting that, in the Eleventh Circuit cases, "comparative qualifications and other

alleged indicia of discrimination (i.e., subjective criteria used by the decision-maker, plaintiff's

belief that his (or her) qualifications were superior), were held insufficient for a factfinder

reasonably to find that the decision was not based on the qualifications of the applicants.").

Sixth, Shuford demands that the City produce the specific answers Lammon gave to

questions in his interview.  There is no requirement that an employer do this to avoid liability

under Title VII, and this court will not impose such a requirement today.

Seventh, Shuford notes that the top three candidates selected by Albright and Burke were

all white males.  Shuford attempts to imply that if the top three candidates out of ten candidates

all happened to be white, then Albright and Burke must have harbored racist motives in selecting

their top three candidates.  Shuford's argument is insufficient to survive summary judgment.

Shuford presents no evidence of how many of the applicants or certified applicants were white.

If all of the applicants except Shuford were white, for example, then his argument carries no

weight at all.  In any event, Shuford's bare argument that the three final candidates for the

---

[9]In fact, it is unclear whether Shuford is even as qualified as Lammon.  Shuford does not
state how much experience Lammon has, nor does Shuford explain any of Lammon's credentials
besides noting that Lammon was a car salesman in the past, so it is impossible to compare
Shuford's experience with Lammon.

position were white, when considered in light of the fact that Shuford has made no viable

arguments of pretext, is not enough to create a genuine issue of material fact in this case.

In sum, because Shuford's arguments fail to show that the City's proffered legitimate,

nondiscriminatory reasons for choosing not to promote Shuford were pretext, summary judgment

is due to be granted both as to Shuford's race discrimination claim, and as to his retaliation

claim, against the City with respect to the Service Center Manager Position.


**D.      The January 22, 2009 Garage Superintendent Position - Race Discrimination and Retaliation**

Shuford argues that the City's failure to promote him to the January 22 Position was the

result of race discrimination and retaliation.  The City argues that Shuford failed to exhaust his

administrative remedies by failing to file an EEOC charge with respect to this claim.

Prior to filing a Title VII lawsuit, "a private plaintiff must file an EEOC complaint

against the discriminating party and receive statutory notice from the EEOC of his or her right to

sue the respondent named in the charge."  *Forehand v. Fla. State Hosp. at Chattahoochee*, 89

F.3d 1562, 1567 (11th Cir. 1996) (citing *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th

Cir. Unit B 1982)).[10]  If the plaintiff receives notice of his or her right to sue, the plaintiff may

then bring a judicial complaint, but that complaint "'is limited by the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination.'"

*A.M. Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (citing *Mulhall v.*

---

[10]In *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions issued by any Unit B panel of the Fifth Circuit after October 1, 1981.

*Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994)), *overruled on other grounds*, *Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003).  This means that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint . . . [however,] allegations of new acts of discrimination are inappropriate."  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989)).

"[C]onditions precedent to a Title VII action," such as filing a proper EEOC charge, "are not jurisdictional prerequisites."  *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1009 (11th Cir. 1982); *see also Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010). On the other hand, if a defendant denies "'specifically and with particularity' that the preconditions have not been fulfilled . . . . [then t]he plaintiff . . . bears the burden of proving that the conditions precedent . . . have been satisfied."  *Jackson*, 678 F.2d at 1010.

Shuford admittedly did not file an EEOC charge that specifically complained about discrimination or retaliation with respect to the January 22, 2009 Garage Superintendent position.  Shuford claims that he nevertheless exhausted his administrative remedies because he "filed this complaint along with his complaint against the Defendant with regard to Lammons [sic]."  Pl.'s Resp. in Opp. to Summ. J. at 19.  It is difficult to understand the meaning of this statement.  The court interprets this statement to mean that Shuford claims that he complained about alleged race discrimination and retaliation with regard to the January 22 Position in the same EEOC charge that he used to complain about the March 12, 2009 Service Center Manager

Position.[11]  Yet the EEOC charge that he filed relating to the Service Center Manager Position

says nothing whatsoever about the January 22 Position; rather, it specifically bases the charge

on, and only discusses, the Service Center Manager Position.  *See* Ex. M to Def.'s Br. in Supp.

of Summ. J. at 1.  That charge also lists May 22, 2009 as the earliest and only date the

discrimination complained of in that charge took place, by the hiring then of a white male for the

Service Center Manager Position.  Ex. M to Def.'s Br. in Supp. of Summ. J. at 1.  Therefore, this

charge does not serve in any way to exhaust Shuford's administrative remedies with respect to

the January 22 Position.

Shuford next argues that the alleged discrimination that occurred with respect to the

January 22 Position was "an ongoing act."  Shuford provides no supporting evidence for this

claim, either.  As a matter of fact, the court notes that in Shuford's EEOC charge filed with

respect to the Service Center Manager Position, which he filed six months after the City filled

the January 22 Position, Shuford did not check the box for "CONTINUING ACTION" under

"Date(s) Discrimination Took Place," but stated under "Earliest," "05-22-2009."  Ex. M to

Def.'s Br. in Supp. of Summ. J. at 1.

In sum, Shuford fails to present any evidence to satisfy his burden of showing that he

exhausted his administrative remedies with respect to the January 22 Position, or that there is any

legal reason for excusing his failure to do so.  *See Jackson*, 678 F.2d at 1010.  Therefore,

summary judgment is due to be granted with respect to Shuford's claim that he did not receive

the January 22 Position due to race discrimination and retaliation.

---

[11]Shuford provides no evidence that he filed a separate charge along with his charge
regarding the Service Center Manager Position, which he surely would have done if that had
been the case.

**V.  <u>CONCLUSION</u>**

For the foregoing reasons, the Motion for Summary Judgment is GRANTED to the City as to all of Shuford's claims.

Done this 12th day of April, 2011

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE